IN the MATTER OF DISCIPLINARY
PROCEEDINGS AGAINST Charles K.
WILDERMUTH, Attorney at Law.

Supreme Court

*No. 86–0897–D. Submitted on briefs November 4, 1987.—
Decided December 16, 1987.*

(Also reported in 416 N.W.2d 607.)

For the appellant, Board of Attorneys Profession-
al Responsibility, there was a brief by *Earl H. Munson*
and *La Follette & Sinykin,* Madison.

For the respondent, Charles K. Wildermuth, there was a brief by *William R. Wilde* and *Curtis-Wilde Law Offices,* Oshkosh.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

This is an appeal by the Board of Attorneys Professional Responsibility (Board) from the referee's conclusion that, by undertaking and continuing representation of the assignees in an assignment of vendees' interest in a land contract while simultaneously representing the vendees and the land contract vendors, Attorney Wildermuth did not violate the Code of Professional Responsibility prohibition of a lawyer's accepting or continuing employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the employment.[1] The Board also appealed

---

[1] SCR 20.28 (1986) provides: "**Refusing to accept or continue employment if the interests of another client may impair the independent professional judgment of the lawyer.** (1) A lawyer shall decline proffered employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proferred employment, except to the extent permitted under sub.(3).

"(2) A lawyer may not continue multiple employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, except to the extent permitted under sub. (3).

"(3) In the situations covered by subs. (1) and (2), a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of

from the referee's recommendation that appropriate discipline for Attorney Wildermuth's having acted in the transaction lacking adequate preparation and neglecting the matter is a 30-day suspension of his license to practice law; the Board argued that Attorney Wildermuth's misconduct warrants a three-month suspension of his license.

We conclude that Attorney Wildermuth's representation in the land contract assignment matter was prohibited by our rules, and we determine that a 60-day suspension of his license to practice law is appropriate discipline for his misconduct in the matter.

Attorney Wildermuth was licensed to practice law in Wisconsin in 1949 and practices in Green Lake county. He has twice previously been the subject of attorney disciplinary proceedings: in March, 1967, his license to practice law was suspended for six months as discipline for having commingled client funds with his personal funds, having misrepresented that he had paid taxes on behalf of a client and having neglected more than 30 estates and one real estate matter, *State v. Wildermuth*, 34 Wis. 2d 235, 148 N.W.2d 656 (1967); on February 14, 1981, he received a private reprimand from the Board for neglect of a legal matter, failure to carry out a contract of employment and failure to seek the lawful objectives of his client through reasonably available means. The referee in this proceeding is Attorney James E. Doyle, Jr.

such representation on the exercise of the lawyer's independent professional judgment on behalf of each.

"(4) If a lawyer is required to decline employment or to withdraw from employment under this rule, no partner or associate of the lawyer or his or her firm may accept or continue that employment."

Following a disciplinary hearing, the referee made the following findings of fact. In 1980, Mr. and Mrs. Grabowski, long-standing clients of Attorney Wildermuth, sold their tavern business on land contract to a Mr. King and his minor son. Attorney Wildermuth represented both the sellers and the buyers in that transaction and at the time knew that the Grabowskis were liable on two notes, totaling approximately $7800, secured by mortgages on the property. Shortly after that closing, the Grabowskis left the state, and throughout 1981 and early 1982 Attorney Wildermuth continued to represent them, assisting them in their making mortgage payments, dealing with the mortgagees concerning delinquent payments and collecting payments from the vendees on the land contract.

In the spring of 1981, the Kings agreed to sell their interest in the land contract to Mr. and Mrs. Jones. Mr. King and Mr. Jones asked Attorney Wildermuth to represent both of them in arranging to transfer the land contract interest, the assets of the tavern business and the liquor license. Attorney Wildermuth informed them of the potential conflict of interest inherent in the dual representation and indicated the desirability that they retain separate counsel. He stated that he would have to withdraw from representing either of them in the event any dispute between them arose, and he told them he had represented the Grabowskis and had drafted the land contract itself. He also informed them of the mortgages on the property, as well as the Grabowski's responsibility to make payments on the underlying notes.

Following that disclosure, Mr. King and Mr. Jones, who had been authorized by Mrs. Jones to act

on her behalf in arranging the transaction, consented to the dual representation. Subsequently, after talking with Mr. King and Mr. Jones and expressing some uncertainty, Mrs. Jones agreed to Attorney Wildermuth's representation of both sides in the assignment transaction.

At the closing held May 1, 1981, Attorney Wildermuth told the parties of their differing interests in the transaction and suggested they each consider retaining their own attorney. Although this was the first time Mrs. Jones met with Attorney Wildermuth, he did not mention the existence of the mortgages on the property. Attorney Wildermuth was not then aware that the Grabowskis had failed to make the required mortgage payments for the months of March, April and May of 1981, nor had he attempted to ascertain the status of the mortgage loans. He had not caused the abstract to the property to be continued to date of closing and had neither been asked for nor gave an opinion on title to the Joneses. Also, Attorney Wildermuth had not sought the appointment of a guardian ad litem to represent Mr. King's son, who he knew was still a minor. Following the closing, Attorney Wildermuth did not record the assignment of the land contract.

Some time between June 5 and June 15, 1981, Attorney Wildermuth learned of the Grabowskis' delinquency on the mortgage notes. The Grabowskis had sent him a blank check to make the delinquent payments, which totaled $654.25, but that check was subsequently dishonored for insufficient funds. The mortgagee then brought a foreclosure action and Attorney Wildermuth appeared on behalf of the Grabowskis; the Joneses, however, were not named parties in that action. Attorney Wildermuth never

told the Joneses of the Grabowskis' delinquency in making mortgage payments, even though he had on a number of occasions called to urge them to make payments on the land contract; neither did he inform them of the foreclosure action.

In mid-June, 1981 Attorney Wildermuth knew the Grabowskis were attempting to sell their interest in the land contract. In the fall of that year he dealt on their behalf with a potential buyer to whom they had offered to sell their contract interest for $16,000, but that transaction was never consummated. In December, 1981 the Joneses retained other counsel to represent them in matters concerning the property and the following January Attorney Wildermuth discussed with that attorney the possibility of the Joneses' buying the Grabowskis' interest for $16,000. Prior to that time, Attorney Wildermuth had not told either the Joneses or their attorney that the Grabowskis had wanted to sell their interest. The Joneses did not purchase the interest; subsequently, after the balance due on the land contract had been paid, the business was closed.

On the basis of these facts, the referee found that Attorney Wildermuth's representation of the Joneses terminated the day of closing, and he concluded that, although Attorney Wildermuth's undertaking to represent the Joneses while also representing the Kings and having previously represented the Grabowskis came within the general prohibition of SCR 20.28(1) (1986) because his independent professional judgment in behalf of any one of the clients was likely to be affected by his representation of the others, the exception to the general prohibition, SCR 20.28(3) (1986), was applicable. Thus, the referee concluded that it was obvious Attorney Wildermuth could ade-

quately represent the interest of each party for the extent of time he was representing the Joneses and that the Joneses had consented to the multiple representation after full disclosure of the possible effect of such representation on the exercise of Attorney Wildermuth's independent judgment on behalf of each client. The referee explicitly did not consider whether Attorney Wildermuth had engaged in professional misconduct by acting on behalf of the Grabowskis in attempting to collect land contract payments from the Joneses, in representing the Grabowskis in the foreclosure action in which the Grabowskis' interests may have been adverse to the Joneses' and in negotiating with the Joneses' lawyer for the sale of the Grabowskis' interest in the land contract, as the Board had not alleged any misconduct with respect thereto.

However, the referee concluded, as the parties had conceded, that Attorney Wildermuth violated SCR 20.32 (1986)[2] by handling the assignment transaction without adequate preparation and by neglecting the matter in the following respects: he failed to list the mortgages as liens in the land contract assignment, failed to obtain an affidavit of creditors for the assignees, failed to ascertain the status of the mortgage loans for the assignees, failed to examine title on the assignees' behalf and to provide them a written statement of liens and title defects, failed to seek the appointment of a guardian ad litem for the minor assignor and failed to promptly record the assignment of the land contract.

---

[2] SCR 20.32 (1986) provides: "A lawyer may not...

"(2) Handle a legal matter without preparation adequate in the circumstances.
"(3) Neglect a legal matter entrusted to the lawyer."

In this appeal, the Board contended that the referee's finding that Attorney Wildermuth's representation of the Joneses terminated the day of the closing was erroneous and that he erred in concluding that there was no violation of SCR 20.28 (1986). The Board argued that Attorney Wildermuth's professional responsibility to the Joneses extended beyond the day of closing and that his representation of the Joneses continued at least to July 1, 1981, on which date the liquor license was to be issued to the Joneses. It was also the position of the Board that Attorney Wildermuth's conduct following the closing was adverse to the Joneses and was not remedied by the information he previously had given them concerning the possible effect of the multiple representation on the exercise of his independent professional judgment on their behalf. The Board asserted that by withholding from the Joneses the fact of the Grabowskis' delinquency in making mortgage payments and by not informing the Joneses that the mortgages had started a foreclosure action and that the Grabowskis were attempting to sell their interest in the land contract, Attorney Wildermuth took a position adverse to the interest of the Joneses and favoring the Grabowskis. Moreover, Attorney Wildermuth's repeated attempts to get the Joneses to make payments to the Grabowskis under the land contract constituted a position adverse to the Joneses and favoring the Grabowskis.

Because of these adverse interests, the Board argued, Attorney Wildermuth had an absolute obligation to insist that the Grabowskis and the Joneses each retain separate counsel, as it was obvious he could not adequately represent the interests of each. Any continued representation of the Grabowskis in dealing with the Joneses after the closing was an

obvious conflict of interest, not susceptible of remedy by the Joneses' prior consent to multiple representation.

We agree. The referee erred in finding that Attorney Wildermuth's representation of the Joneses terminated upon completion of the closing. His professional obligation to the Joneses survived that closing. In order to protect the Joneses' newly acquired interest in the property, Attorney Wildermuth had a duty to record the assignment of the land contract, which he never did. He also had a duty to inform the Joneses of facts coming to his attention which, had they been known at the time of closing, would likely have affected the outcome of the transaction. Here, that was the fact that at the time of the closing, the Grabowskis were in default on the mortgage notes. Attorney Wildermuth did not learn of that delinquency until six weeks after closing, but he never informed the Joneses of the fact, despite his continued contact with them to have them make payments under the land contract.

The Board also contested the referee's conclusion that the information Attorney Wildermuth had provided to the Joneses concerning problems with the multiple representation was "sufficient to constitute the 'full disclosure' required ..." exception to the general prohibition of multiple representation. Mrs. Jones testified that Attorney Wildermuth had not discussed the matter of multiple representation at the closing; Attorney Wildermuth's testimony was to the contrary. The only evidence before the referee of what he told his clients was Attorney Wildermuth's own testimony.

We find it unnecessary to determine whether the advice Attorney Wildermuth gave to the Joneses concerning multiple representation problems was sufficient to bring that representation within the exception to SCR 20.28(1) (1986), for that exception also requires that it be "obvious that the lawyer can adequately represent the interest of each [client]." SCR 20.28(3) (1986). Upon discovery, albeit after the closing, of the Grabowskis' delinquency on the mortgage notes, it became obvious that Attorney Wildermuth could not adequately represent the interest of the Grabowskis and the interest of the Joneses simultaneously. As his professional obligation to the Joneses extended beyond the closing, Attorney Wildermuth's continuing to act in the matter was proscribed by SCR 20.28(2) (1986), which prohibits a lawyer from continuing multiple employment "if the exercise of the lawyer's independent professional judgment on behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client."

In its brief, the Board urged the court "to express prospectively the desirability, or the necessity, of written advice to clients on each occasion that an attorney represents clearly adverse interests falling within the proscription of SCR 20.28(1)." This, the Board asserted, would avoid any evidentiary problem as to what was said by whom and to whom. This is a sound suggestion, but we do not go so far as to *require* an attorney to make written disclosure, for this would, in effect, amend a rule of professional conduct by opinion issued in a particular disciplinary proceeding rather than in the exercise of the court's rule-making authority.

We note that the revised rule in this regard, to become effective January 1, 1988, requires client

consent in writing after consultation if the representation of that client will be directly adverse to another client or may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, but the rule does not require that the consultation itself be in writing. SCR 20:1.7. Because the revised rule requires a writing in any event, it would be good practice for a lawyer to establish compliance with the rule's disclosure requirement by giving the required consultation in writing and having the client give consent to the representation in the same writing.

On the issue of discipline for Attorney Wildermuth's professional misconduct the Board argued that the 30-day license suspension recommended by the referee is insufficient. The referee had refused to consider Attorney Wildermuth's 1967 license suspension as a factor for the reason that it was "so remote in time and because there is no evidence of any disciplinary action taken against the respondent for 15 years after the suspension." The Board took the position that the private reprimand imposed in 1981, just prior to Attorney Wildermuth's undertaking the representation of the Joneses and the Kings, in effect brought forward the 1967 misconduct to the date of the private reprimand and justified its being considered in determining appropriate discipline in this case. The Board expressed its view that a three-month suspension of Attorney Wildermuth's license would constitute appropriate discipline.

We note at the outset that the referee's recommendation of a 30-day suspension as discipline occurred prior to our decision holding that the minimum period an attorney's license will be suspended for disciplinary reasons is 60 days. *Disciplinary Proceed-*

689

*ings Against Schnitzler,* 140 Wis. 2d 574, 412 N.W.2d 124 (1987). In light of the seriousness of his misconduct and his prior disciplinary history, including the license suspension in 1967, we determine that a 60-day suspension of Attorney Wildermuth's license to practice law is appropriate discipline. His clients, the Joneses, had a right to rely on him to represent their interests in the transaction and to inform them in the event the interests of his other clients in the matter adversely affected theirs. Not only did he fail to protect the Joneses after learning of the Grabowskis' default on the mortgage notes, but he also failed to give them the information necessary to act on their own to protect their interests.

IT IS ORDERED that the license of Charles K. Wildermuth to practice law in Wisconsin is suspended for a period of 60 days, commencing February 1, 1988.

IT IS FURTHER ORDERED that within 60 days of the date of this order Charles K. Wildermuth pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing of his inability to pay the costs within that time, the license of Charles K. Wildermuth to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Charles K. Wildermuth comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

ABRAHAMSON, J., did not participate.